2

## STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF CHARLEVOIX

**KEVIN EDGECOMB**

    Plaintiff,

vs.

**RHI MAGNESITA**, a Foreign Corporation
and **IPEC, INC.**, a Foreign Corporation,

    Defendants.
_____/

**FELDHEIM & WILENKIN, P.C.**
STUART M. FELDHEIM (P30947)
Attorneys for Plaintiff
30300 Northwestern Highway, Suite 108
Farmington Hills, MI 48334
(248) 932-3503; Fax (248) 932-1734
_____/

CASE NO.: 19-0658-24 NO
HON.


RECEIVED FEB 20 2019 BY:_____

### COMPLAINT AND JURY DEMAND

There is no civil action between these parties arising out of the same transactions or occurrence as alleged in this complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this complaint that is either pending or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a judge in this Court.

NOW COMES the Plaintiff, **KEVIN EDGECOMB,** by and through his attorneys, **FELDHEIM & WILENKIN, P.C.**, and for his Complaint against the above-named Defendants, RHI MAGNESITA and IPEC, INC., states as follows:

### COUNT I
### COMMON ALLEGATIONS

1)     During all relevant times, Plaintiff Kevin Edgecomb, D.O.B. 11-04-1966, was, and continues to be, a resident of Corona, California. Plaintiff states that at all relevant times, he was an employee of JT Thorpe Corporation, which company had

been hired as a subcontractor by defendant RHI Magnesita to assist in the construction of a new cement vessel/kiln at the St. Marys Cement Plant in Charlevoix, Michigan. Plaintiff states that JT Thorpe was responsible for installing a thermal mud lining onto the interior surface of the vessel/kiln under construction.

2) During all relevant times, Defendant RHI Magnesita, was, and continues to be, a foreign corporation, engaged in the world-wide refractories/cement plant construction business. Upon information and belief, RHI Magnesita has a principle business location at 425 South Salem Church Road, York, Pennsylvania 17408. During all relevant times, Defendant Magnesita was a prime general contractor hired and contracted by St. Marys Cement U.S., LLC in 2017 or 2018 to oversee the building of a new cement vessel/kiln at the St. Marys Cement Plant located in Charlevoix, Michigan.

3) During all relevant times, Defendant IPEC, Inc. ("IPEC"), was a corporation licensed to do business in Michigan, corporate identification number 801997385, and has its registered office address and registered agent, The Corporation Company at 40600 Ann Arbor Road East, Suite 201, Plymouth, MI 48170. During all relevant times, Defendant IPEC was under a subcontract with co-defendant RHI Magnesita pursuant to which IPEC agreed to erect and maintain essential construction scaffolding in the interior of the vessel/kiln which scaffolding was intended for use by various construction crews from different trades, including your Plaintiff herein, in the performance of their work activities on the St. Marys vessel/kiln construction site.

4) Plaintiff states that both IPEC and RHI Magnesita were legally obligated to assure that the erection, maintenance, inspection and certification of the IPEC scaffolding would be accomplished in conformance with all applicable Federal and State

2

safety rules and regulations promulgated by either MSHA and/or OSHA/MIOSHA pursuant to an interagency agreement between MSHA, the U.S. Department of Labor and OSHA originating in March of 1979. Plaintiff states that defendants, at all relevant times, also owed a concurrent duty of care to Mr. Edgecomb consistent with applicable Michigan common law regarding construction site activities.

5) The amount in controversy exceeds Twenty-Five Thousand ($25,000.00) Dollars, exclusive of costs, interest and attorney's fees, and is otherwise within the jurisdiction of this Court.

## COUNT II
## ACTIVE NEGLIGENCE OF RHI MAGNESITA AND IPEC, INC.

6) Plaintiff incorporates by reference paragraphs 1-5 as though fully set forth herein.

7) On April 16, 2018, Mr. Edgecomb reported to work at the St. Marys Cement Plant construction site where he functioned as a supervisor for JT Thorpe over JT Thorpe employees. Plaintiff had been put in charge of an "inlet" crew of approximately nine (9) JT Thorpe employees whose specific function was to help in the formation and installation of the thermal interior lining of the vessel/kiln in the inlet area. Plaintiff avers that the formation of the interior lining is accomplished by securement of a whaler form to the interior wall of the kiln after which a "mud" substance is blown through a hose to adhere to the interior wall of the kiln.

8) Upon arriving at the work site on April 16, 2018, Mr. Edgecomb discovered that Defendant IPEC had raised the scaffold on which JT Thorpe workers had been working the previous day, to a higher level, but had failed to raise and install the yo-yo

3

anchor point that was required to be raised and installed at the highest functioning level of the scaffold, also known as the "dance floor" in the construction trade.

9)   Plaintiff states that after recognizing that the yo-yo anchor point had not been raised and installed as required, he complained to an IPEC supervisor about the absence of the required safety device. While Plaintiff does not know the name of the individual he complained to, he states that that individual was wearing a hard hat with the name "Grasshopper" on the helmet. Plaintiff further avers that after lodging his complaint with "Grasshopper" that "Grasshopper" informed Mr. Edgecomb that IPEC's work crew had been compromised due to a raid by a federal ICE task force wherein a significant number of IPEC's work crew had been arrested for purpose of deportation due to their illegal status in the country. Plaintiff further states that "Grasshopper" assured Plaintiff that "we will get to it when we can, but we are understaffed."

10)   On April 17, 2018, Mr. Edgecomb reported for work at the construction site in the early morning and observed that IPEC had not yet raised and installed the yo-yo anchor point to the height of the dance floor. Mr. Edgecomb again complained to "Grasshopper" who again assured Mr. Edgecomb that IPEC would raise and install the yo-yo anchor point as soon as possible.

11)   Plaintiff avers that in the early afternoon of April 17, 2018, Plaintiff and his crew were forming walls on the interior surface of the kiln, which included formation of a complete band around the square of the structure with whalers and bolted screws. This work activity included coordination between Plaintiff and a co-employee who was responsible for pumping "mud" through a hose onto the interior surface of the structure. At approximately 2:00 p.m., while working on the dance floor, Mr. Edgecomb noticed

4

that one of the whalers was bowing out in a location beneath the "dance floor." Mr. Edgecomb called a co-employee on radio to instruct that pumping be stopped so that he could check the whaler and hardware in the area in question. At that time, Mr. Edgecomb requested that one of his co-employees, Zachary Pinkerton, assist him in going to the area below the dance floor to inspect the hardware and whaler. Plaintiff further states that due to the absence of the required yo-yo anchor point, Plaintiff was required to enter a work space adjacent to the dance floor to secure his pelican hook onto the ladder from which he intended to descend down to the area where the "mud" was bowing out. Plaintiff states that as he stepped out from the dance floor through the guardrail gate intending to attach his pelican hook to the ladder, that a snagging of his harness on the swing gate resulted in a misstep onto the ladder causing Plaintiff to fall approximately 35 feet through the scaffold, bouncing off one lower platform before landing on the hard surface of the inlet floor where your Plaintiff struck his head and was rendered unconscious with bleeding from the head. Plaintiff states that he suffered life altering injuries, enumerated hereafter, from his fall. Plaintiff states that he was wearing his hard hat at the time of the accident.

12) Mr. Edgecomb did not work the rest of the accident date and presented for medical examination at the Charlevoix Hospital E.R. the next morning with complaints of head injury, nausea and right rib pain. Mr. Edgecomb was diagnosed with "Head injury, right rib contusion" and discharged with post-concussion instructions given his history of head injury with loss of consciousness.

13) During all relevant times, RHI Magnesita and IPEC, shared a non-delegable duty of care under the Michigan common law to all construction workers on

the construction site, including your Plaintiff herein, to ensure that IPEC scaffolding was safe and in compliance with all applicable federal and state laws pertaining to the erection, maintenance, inspection and certification of the scaffolding as being safe, prior to allowing construction work crews to access and work on the scaffolding at the beginning of each work shift. Defendants each negligently breached their individual duty of care owed to Mr. Edgecomb as set forth in paragraphs 14 and 15, respectively:

14) RHI MAGNESITA (General Contractor).

    a. As general contractor on the job site, RHI Magnesita had overall responsibility to maintain safety on the job site. This responsibility included overall scheduling, assuring adequate manning of subcontractor work crews and overall coordination of work activities on the project. In this regard, RHI Magnesita was negligent in the following regards, not by way of limitation:

        i. RHI Magnesita failed to ensure, at the outset of the construction project, that all IPEC crew members were legally present in the United States and legally authorized to be working on the St. Marys Cement Plant construction site.

        ii. RHI Magnesita had actual knowledge that IPEC's work force had been depleted by the ICE raid resulting in a lack of adequate manpower at IPEC to perform its job responsibilities safely and effectively. It was RHI Magnesita's duty to ensure that IPEC's depleted work force would not compromise the safety of the construction site nor

        the safety of the scaffolding that IPEC was installing, maintaining, inspecting and certifying. RHI Magnesita breached its duty of care in this regard.

iii. RHI Magnesita failed to exercise adequate oversight and/or interaction with IPEC to ensure proper inspection and remediation of the subject scaffold on April 16th and April 17th, the accident date: RHI Magnesita should have ordered IPEC to install the missing yo-yo ancho point that JT Thorpe personnel had complained about on April 16th immediately upon learning about the absence of the required safety device. Upon information and belief, RHI Magnesita was informed of the missing safety device on April 16, 2018.

iv. RHI Magnesita failed to make a timely and adequate response/remediation to Mr. Edgecomb's complaint regarding the missing yo-yo anchor point when RHI Magnesita knew or should have known about that complaint.

v. RHI Magnesita failed to provide adequate coordination, control and oversight of the project, so that various subcontractor crews would not conflict with each other and/or put construction workers at risk. In this regard, RHI Magnesita breached its duty of care owed to all construction workers, whose job responsibilities would require them to use the scaffolding in question, including your Plaintiff

7

        herein. RHI Magnesita, in exercise of its supervisory authority over the work project, should have consulted with appropriate representatives of IPEC following the ICE raid in order to discuss the difficulties IPEC was experiencing due to its short-handed crew. In this regard, RHI Magnesita should have made arrangements to assist IPEC in supplementing its work force or otherwise taken appropriate remedial measures to assure the safety of the construction site and it's scaffolding. Upon information and belief, the missing yo-yo anchor point could have been installed in less than 30 minutes once RHI Magnesita and/or IPEC gave order that the yo-yo anchor point be raised and installed at the dance floor level.

    b.    The subject scaffold was in a dangerous condition on April 16 and April 17, 2018 due to the lack of the required yo-yo anchor point at a critical access location. This lack of anchor point created a distance that Mr. Edgecomb had to travel, where he was not provided an essential anchor point by which to tie off to while moving between the dance floor and the ladder.

    c.    The scaffold and swing gate were built in such configuration as to create a snag point.

15) IPEC (Sub Contractor).

    a.    IPEC failed to:

8

i. IPEC failed to ensure at the outset of the construction project, that all IPEC crew members were legally present in the United States and legally authorized to be working on the St. Marys Cement Plant construction site. This action was essential to assure the ongoing integrity of IPEC's work crew so that work activities could continue in a timely and safe manner.

ii. IPEC failed to properly and adequately staff, train and supervise it's work crew on the St. Marys Cement Plant construction project to assure that the scaffold would be properly erected, maintained, inspected and certified.

iii. If IPEC did not immediately disclose to RHI Magnesita the fact that its work crew had been depleted due to the ICE raid, it was negligent in that regard.

iv. IPEC failed to adequately train its "competent person" on the requirements for daily inspection and certification of the scaffold.

v. IPEC failed to install a required yo-yo anchor point at the dance floor level when it raised the scaffold prior to certifying the scaffold as safety compliant on both April 16 and April 17, 2018. The scaffold should not have been certified as safety compliant on either date unless and until the yo-yo anchor point was installed.

      vi.      IPEC installed the guardrail and swing gate on the dance floor in such configuration as to create a snagging hazard.

      vii.     IPEC failed to provide a timely and adequate response/remediation to Mr. Edgecomb's complaints regarding the missing yo-yo anchor point on both April 16th and April 17th, 2018.

b.    IPEC's conduct constituted a breach in the duty of care under MSHA and/or OSHA/MIOSHA based on the following failures, not by way of limitation:

    i.      Failure to maintain the scaffold in good condition.

    ii.     Failure to provide necessary anchor points to facilitate utilizing safety harnesses.

    iii.    Failure to provide adequate facilitation of vertical lifelines free from potential snagging.

    iv.    Failure to provide safe access.

    v.     Failure to provide an adequate fall arrest and guardrail system so as to avoid a hazard of "snagging".

    vi.    Failure to provide adequate scaffold inspection for defects and/or unsafe conditions.

    vii.   Failure to properly train its competent person or persons on proper methodology and criteria for daily inspection and certification of the scaffold as being "safety compliant".

    c.    IPEC breached its duty of care to your Plaintiff by the negligence of its "competent person" who certified and tagged the scaffold as "safety compliant" on both April 16 and April 17, 2018 when that competent person knew, or should reasonably have known, that the scaffold was not safety compliant as the required yo-yo anchor point had not been raised and installed at the dance floor level where a construction crew would be working.

16)    That as a direct and proximate cause of the negligence of RHI Magnesita and IPEC, Mr. Edgecomb has suffered the following permanent injuries, with past, present and future damages, including but not limited to:

    a.    A post-concussive syndrome manifested by chronic headaches, disequilibrium, dizziness, vision disturbance, memory loss and loss of smell. Plaintiff avers that he has suffered several "black-out" experiences since his accident, resulting in his falling to the ground.

    b.    Back and chest injuries.

    c.    Physical pain and suffering, with impaired function of his body due to his post-concussive syndrome and back injuries.

    d.    A loss of enjoyment of life and recreational activities previously enjoyed.

    e.    A loss of wages and benefits. Plaintiff is a journeyman craftworker who has worked out of the Bricklayers and Allied Craft Workers Union, Local 4 of Los Angeles, California. His job function as a journeyman craftworker, by definition, entails daily interaction with

ladders and scaffolds which are climbed to perform essential construction activities. Plaintiff will suffer a future loss of earning capacity because his permanent work restrictions preclude him from climbing on and working off of ladders and scaffolds due to his post-concussive residual injuries.

f. Expenses for hospital and medical care, therapy, rehabilitation, medications and transportation.

**WHEREFORE**, Plaintiff, Kevin Edgecomb, respectfully requests that this Court enter judgment in his favor against Defendants RHI Magnesita and IPEC, in whatever amount a jury deems him to be entitled, together with costs, interest, and attorneys' fees.

Respectfully Submitted,

**LAW OFFICES OF FELDHEIM & WILENKIN, P.C.**

By: _____
Stuart M. Feldheim (P30947)
Attorney for Plaintiffs
30300 Northwestern Highway, Suite 108
Farmington Hills, MI 48334
(248) 935-3505; Fax (248) 932-1734

Dated: February 19, 2019

| CERTIFIED |
|---|
| Cheryl Potter Browe, County Clerk |
| _Elence C. Olson_  4/2/19 |
| DEPUTY / DATE |