UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN EDGECOMB,

     Plaintiff,

                                Case No. 1:19-cv-219
v.

                                Hon. Hala Y. Jarbou

MAGNESITA REFRACTORIES CO., et al.,

     Defendants.
_____/

**OPINION**

Plaintiff Kevin Edgecomb suffered a fall and is suing for negligence.  (Compl., ECF No. 5-1.)  There is a complex relationship between parties – this case features three Defendants, some of whom are Cross-Claimants and Cross-Defendants, as well as a Third-Party Defendant. Fortunately, all that matters here is IPEC, Inc.'s status as a Defendant against Edgecomb's negligence claim.  Before the Court is IPEC's motion for summary judgment.  (ECF No. 77.) Edgecomb never filed a response in opposition.  The motion will be granted.

## I.  Jurisdiction

Edgecomb brings a single claim of negligence under Michigan law.  Federal courts may exercise diversity jurisdiction over state law claims if the amount in controversy exceeds $75,000 and no plaintiff is a citizen of the same state as any defendant.  28 U.S.C. § 1332.  Edgecomb is a resident of California.  (Compl., PageID.25.)  IPEC's principal place of business is Michigan, where it is also incorporated.  (Corrected Notice of Removal, ECF No. 5, PageID.22.)  The amount in controversy exceeds $75,000.  (*Id.*, PageID.21.)  Therefore, the Court has jurisdiction over the case.

**II. Background**

As will be explained below, the Court will treat IPEC's statement of facts as undisputed because Edgecomb never opposed the motion for summary judgment.  The motion can be resolved on simple grounds, so the Court will present a compressed recitation of the facts.

In 2018, St. Mary's U.S. LLC in Charlevoix, Michigan, wanted some construction work done on a kiln in its cement plant.  (Mot. for Summ. J., PageID.535.)  St. Mary's had hired Magnesita Refractories Company to act as the general contractor for the construction project.  (*Id.*, PageID.535-536.)  Magnesita subcontracted J.T. Thorpe & Sons, Inc. to install refractory lining in the construction area.  (*Id.*, PageID.536.)  Magnesita also subcontracted IPEC to provide scaffolding for the construction project.  (*Id.*)   J.T. Thorpe hired Edgecomb to serve as a foreman on the construction job.  (*Id.*)  On April 17, 2018, Edgecomb fell from the fourth level of scaffolding installed by IPEC and suffered injuries, resulting in the present lawsuit.  (*Id.*)

The construction project had a "100% tie-off policy," requiring workers to ensure their safety harnesses were secured to a proper anchor point whenever there was a risk of falling, such as when moving between scaffolding levels.  (*Id.*, PageID.536, 545.)  The tie-off policy could be satisfied in one of two ways: "(1) attaching the 'pelican hooks' equipped to the end of 6-foot long 'double lanyards' on either side of their safety harnesses to an anchor point, or (2) connecting the 'D-Ring' on the back of their harness to the carabiner of a self-retracting lifeline (A.K.A. a 'yo-yo')."  (*Id.*, PageID.536) There is some indication that workers at the site preferred using yo-yos to double lanyards because double lanyards slowed movement compared to yo-yos.  (*Id.*, PageID.536-537.)

Edgecomb's responsibilities as a foreman included crew safety and identifying and curing unsafe conditions, or instead ordering work to stop until unsafe conditions were cured.  (*Id.*, PageID.542-543.)  When work began on April 17, 2018, Edgecomb noticed that the yo-yo on the

fourth scaffold level was unusable.  (*Id.*, PageID.545.)  He did not order work to stop because "'you can still be 100 percent tied off climbing down the ladder with pelican hooks. It's just more difficult, and it's just more time-consuming.'"  (*Id.* (quoting Edgecomb Dep., ECF No. 77-3, PageID.609).)  Edgecomb ascended and descended the fourth level multiple times without issue.  (*Id.*)  At some point in the afternoon, Edgecomb noticed a problem on a lower level.  (*Id.*, PageID.546.)  "Moving quickly to reach his destination below, [Edgecomb] did not tie-off [using double lanyards] before [descending]."  (*Id.*)  Unfortunately, he fell.

Two years before the accident, Edgecomb was bitten by bedbugs while staying at a hotel. (*Id.*)  He experienced severe and lasting symptoms from the bites, afflicting him with "delusional disorder, insomnia," and occasionally causing him to black out.  (*Id.*)  For a while, he self-medicated with NyQuil to sleep.  (*Id.*, PageID.546-547.)  This caused him to feel out of it the following day.  (*Id.*, PageID.547.)  Eventually, he sought professional treatment and was prescribed a variety of medications, which helped his symptoms but "'made [him] drool like a vegetable.'"  (*Id.* (quoting Edgecomb Test., ECF No. 77-19, PageID.1292).)[1]  Edgecomb was still on those prescription medications in April 2018, and had taken sleeping aids the night before his fall.  (*Id.*)  He believed this may have played a role in his accident: "'I think it was from being too tired or . . . I don't know.'"  (*Id.*, PageID.547-548 (quoting Edgecomb Test., PageID.1296).)

### III. Standards

#### A. Summary Judgment

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] Edgecomb sued the hotel where he was bitten by bedbugs, and some of the testimony covered the April 17, 2018 fall at the St. Mary's plant.  Citations to "Edgecomb Testimony" refer to his testimony from that trial.

Fed. R. Civ. P. 56(a).  Courts must examine the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to determine whether there is a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P 56(c)) (internal quotations omitted).  A fact is material if it "might affect the outcome of the suit."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Id.* at 249 (citing *First Nat'l Bank. of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party [by a preponderance of the evidence], there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *City Serv.*, 391 U.S. at 289).  In considering the facts, the Court must draw all inferences in the light most favorable to the nonmoving party.  *Id.*  Summary judgment is not an opportunity for the Court to resolve factual disputes.  *Anderson*, 477 U.S. at 249.

### B. Failure to Respond to Motion for Summary Judgment

Local Rule 7.2(c) commands that "any party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials."  W.D. Mich. L.Civ.R 7.2(c).  If the nonmoving parties fails to respond, the motion is treated as unopposed.  *See Tajaldeen v. Norwood*, No. 06-11764, 2007 WL 2081452 (E.D. Mich. July 17, 2007).  "'When a nonmoving party fails to respond to a summary judgment motion in the time frame set by the local rules, district courts in the Sixth Circuit have largely consider[ed] the [moving party's] statement of material facts to be undisputed for purposes of . . . summary judgment.'"  *Jones v. City of Franklin*, 677 F. App'x 279, 285 (6th Cir. 2017) (quoting *Simpson v. Bredesen*, No. 2:10-cv-02950-JPM, 2015 WL 5655999, at *4 (W.D. Tenn. Sept. 24, 2015)) (internal quotations omitted).

However, failing to respond to a summary judgment motion does not amount to default. "'A party is never required to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant.'" *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014) (quoting *Smith v. Hudson*, 600 F.2d 60, 64 (6th Cir. 1979)). "Even where a party 'offer[s] no timely response to [a] [] motion for summary judgment, the District Court [may] not use that as a reason for granting summary judgment without first examining all the materials properly before it under Rule 56(c).'" *Id.* (quoting *Smith*, 600 F.2d at 65).

In deciding an unopposed motion for summary judgment, courts may only consider the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Tr.*, 908 F.2d 399, 404 (6th Cir. 1992). "[A] district court is not required to search the record to determine whether genuine issues of material fact exist" for an unopposed summary judgment motion. *Willis v. Valley Residential Servs.*, No. 06-13686-BC, 2008 WL 1820892, at *4 (E.D. Mich. Apr. 22, 2008) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)). It is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the [unopposed] motion." *Guarino*, 908 F.2d at 406.

## IV. Analysis

Because Edgecomb did not respond to the motion for summary judgment, the facts asserted by IPEC will be treated as undisputed. Based on the undisputed facts set forth in Section II above, the Court concludes that there is no genuine dispute of material fact and IPEC is entitled to judgment as a matter of law. IPEC advances several arguments, many of them compelling, all of them decisive. The Court agrees that IPEC is entitled to summary judgment because Edgecomb cannot establish causation. The Court's analysis will focus on that argument alone.

There are four elements of a negligence claim under Michigan law: (1) duty; (2) breach; (3) causation; and (4) damages. *See Loweke v. Ann Arbor Ceiling & Partition Co.*, 809 N.W.2d 553, 556 (Mich. 2011).   The causation element has two prongs: (1) factual causation, and (2) proximate causation. *Ray v. Swager*, 903 N.W.2d 366, 371 (Mich. 2017).   Factual causation "requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Id.* (internal quotations omitted).   Proximate causation "involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Id.*

Here, Edgecomb cannot establish proximate causation.  Though the 'yo-yo' on the fourth scaffold level was apparently out of operation (though not relevant here, IPEC disputes responsibility for the yo-yos), Edgecomb had another method of tying off before descending levels: the double lanyards.  The 100% tie-off policy only required that *either* yo-yos *or* double lanyards be available.  And on the day of the fall, Edgecomb was aware that the yo-yo on the fourth level would not work.  Nevertheless, perhaps due to the side effects of his medications, he did not secure himself using the double lanyards before attempting to descend from the fourth level.  He was aware of the need to tie off but did not do so.  Moreover, if the lack of working yo-yos was such a great risk, he had a responsibility to order work to stop until the yo-yo could be fixed.  But he did not.  It is tragic that he fell, but it was not foreseeable to IPEC that Edgecomb would forego safety measures without a working yo-yo rather than securing himself with the double lanyards, as policy required him to do.  A reasonable jury could not find in Edgecomb's favor on this issue and IPEC is therefore entitled to summary judgment.

## V.  Conclusion

For the foregoing reasons, Defendant IPEC's motion for summary judgment will be granted.  An order will enter consistent with this Opinion.


Dated:   February 4, 2021                        /s/ Hala Y. Jarbou
                                                 HALA Y. JARBOU
                                                 UNITED STATES DISTRICT JUDGE